UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Ethan Backer d/b/a Backer Photography,

    Plaintiff(s),

v.

Highsteppin' Productions, LLC,

    Defendant(s).

Civil Action No. 09-10728

JURY DEMAND

## COMPLAINT

For its Complaint, Plaintiff Mr. Ethan Backer alleges as follows:

### The Parties

1. The Plaintiff, Mr. Ethan Backer, also doing business as Backer Photography, is an individual residing at 17 Francis Ave. Cambridge MA 02138, with a permanent address and mailing address at 11 Reservoir Dr., Southborough MA, 01772 and doing business as a photographer and photo-journalist in the Commonwealth of Massachusetts.

2. Upon information and belief, Defendant Highsteppin' Productions, LLC ("Defendant") is a Domestic Limited Liability Company organized under the laws of the Commonwealth of Massachusetts, registered as having its principal place of business at 100 Cummings Center, Suite 343C, Beverly, Massachusetts, 01915 and having at least one additional location at 240A Elm Street, Suite 20, Somerville, Massachusetts, 02144.

3. Upon information and belief, Phil Stepanian is the sole proprietor, manager and registered agent of Defendant Highsteppin' Productions, LLC.

### Jurisdiction and Venue

4. The Court has personal jurisdiction over Defendant under Massachusetts General Laws Ch. 223A because Defendant is organized under the laws of the Commonwealth of

Massachusetts, maintains its principal place of business in the Commonwealth, transacts business in the Commonwealth, and causes tortious injury in the Commonwealth.

5.      The Court has exclusive subject matter jurisdiction over the copyright claims in this Complaint under 28 U.S.C. § 1331 and 1338(a) and 17 U.S.C. § 301(a). The Court has subject matter jurisdiction over the other claims in this Complaint under 28 U.S.C. § 1367.

6.      Venue is proper in this jurisdiction and district under 28 U.S.C. §§ 1391(b), (c).

**Factual Allegations**

7.      Mr. Backer is a photographer and photo-journalist. He creates and grants limited licenses to his copyrighted Photographs on a regular basis. Photography is Mr. Backer's primary source of income.

8.      Defendant is a music agent for at least the music groups Bonerama and Porter Batiste Stoltz.

9.      Upon information and belief, Defendant owns the domain name *www.highsteppinproductions.com* and operates a website at *http://www.highsteppinproductions.com.*

10.     Upon information and belief, Defendant is also responsible for the maintenance and content on the web-pages of Porter Batiste Stoltz and George Porter, which are hosted at MySpace.com.

11.     Mr. Backer first met Defendant in 2007 through Mr. Backer's girlfriend, who was employed by Defendant at the time.

12.     Accompanying his girlfriend, Mr. Backer attended a number of live music performances by Bonerama and Porter Batiste Stoltz in the Fall/Winter of 2007 including the following:

        a. Porter Batiste Stoltz at Club Metronome in Burlington, VT on November 2, 2007;

        b. Bonerama at the Lion's Den, in New York, NY on December 8, 2007; and

        c. Porter Batiste Stoltz at Blender Theater, in New York, NY on December 29, 2007.

13.     At these shows, Mr. Backer took numerous photographs of the venue, band members, and crowd (the "Photographs").

14.     On two separate occasions, in response to specific requests from Defendant, Mr. Backer licensed to Defendant the right to reproduce some of the Photographs without monetary compensation. On each occasion, Mr. Backer provided Defendant with an oral license to reproduce specific Photographs for targeted, short-term, web-based promotions.

   a. Mr. Backer licensed Defendant to reproduce certain Photographs taken at the November 2, 2007 concert for the exclusive purpose of a one-time email "blast" to individuals who attended the concert.

   b. Mr. Backer licensed Defendant to reproduce certain Photographs taken at the December 29, 2007 concert for a short-term music download website that could be accessed for a limited time only by the individuals who attended the concert.

15.     When Defendant approached Mr. Backer a third time requesting rights to reproduce the Photographs, Mr. Backer engaged the services of Barnaby Jackson to act as his representative for purposes of negotiation regarding the Photographs.

16.     One of the Photographs included in the Photographs that were the subject of this third request is a photograph of an individual by the name of Page McConnell, a musician in the well-known band Phish. Mr. Backer registered his copyright in the photograph of Page McConnell, referred to hereinafter as the "McConnell Work." *See* Ex. 1, Registration No. VA 1-644-139, dated August 26, 2008.

17.     On February 9, 2009, Mr. Backer filed three separate applications for copyright registration for three sub-sets of the Photographs, which include all of Mr. Backer's Photographs of Bonerama and Porter Batiste Stoltz taken at the concerts listed in paragraph 12 and relevant to this action. All Photographs taken by Mr. Backer are referred to hereinafter as the Works. These applications are attached as follows:

    a.  Attached at Exhibit 2 is a copy of the Service Request Detail from the U.S. Copyright Office showing the status of the application for copyright registration, Case No. 1-157836654, covering 26 images published on December 12, 2007;

    b.  Attached at Exhibit 3 is a copy of the Service Request Detail from the U.S. Copyright Office showing the status of the application for copyright registration, Case No. 1-157836697, covering 180 images published on August 25, 2008; and

    c.  Attached at Exhibit 4 is a copy of the Service Request Detail from the U.S. Copyright Office showing the status of the application for copyright registration, Case No. 1-157836596, covering 12 images published on November 8, 2007.

**Defendant's Unauthorized Reproduction of Plaintiff's Photographs**

18.    Through the course of dealings between the parties, Mr. Backer made clear his intention to be compensated for his work unless expressly agreed otherwise and that rights to specific Works would be negotiated on an image-by-image basis.

19.    In an e-mail dated November 8, 2007, from Mr. Backer to Defendant, Mr. Backer stated,

> If you are interested in using any of the pictures [posted on Backer web-site] I would be happy to work out a deal for you.

Ex. 5, E-mail dated Nov. 8, 2007, from E. Backer to P. Stepanian.

20.    In an e-mail dated November 28, 2007, from Mr. Backer to Defendant, Mr. Backer stated,

> I learned that you are looking to put together a photo/audio blog of the next tour and I would like to be the photographer who does it.
>
>                             \*\*\*
>
> I think this is a mutually beneficial opportunity and I would like to work out a fair deal to make it happen.

Ex. 6, E-mail dated Nov. 28, 2007, from E. Backer to P. Stepanian.

21.     In an e-mail dated April 2, 2008, between Mr. Backer and his girlfriend, Mr. Backer described what he sent to Defendant:

> The pictures that I sent him are basically straight out of the camera. Maybe cropped, maybe a little color corrected. If and when Phil decides t [*sic*] purchase some pictures I will take them into Photo Shop, probably with Ron, and make them as good as they can be.

Ex. 7, E-mail dated April 2, 2008, from E. Backer to M. Snow.

22.     Shortly after this communication, Mr. Backer asked a friend, Barnaby Jackson, to act as intermediary between Mr. Backer and Defendant in negotiating any sale. Mr. Jackson's first e-mail to Defendant, dated on or about April 17, 2008, stated as follows:

> Dear Phil,
>
> I'm writing in an effort to smooth things over and to help create a positive and collaborative relationship between you and Ethan.
>
> I am not an agent. I am a producer and a director, who employs Ethan in various capacities on film shoots, and as a still photographer as well.
>
> Because there seem to be some personal and professional relationship complexities, Ethan asked me to represent him in the sale of his photographs to you.
>
> It is my understanding that you want to use his photographs, but I don't know any details beyond that.
>
> I look forward to speaking to you and finding a way to make everyone happy.
>
> Best, Barnaby

Ex. 8, E-mail dated on or about April 17, 2008, from B. Jackson to P. Stepanian.

23.     Defendant clearly understood Mr. Backer's intentions to receive compensation for reproduction of his Works. In an e-mail to Barnaby Jackson dated August 22, 2008, Defendant's attorney, Mr. Herlihy, requested "digital proofs of all photos" that Mr. Backer had taken at concerts of Highsteppin' musicians. Defendant stated that,

> **It may be that Highsteppin Productions would be willing to purchase rights to some of these photographs**, however it is impossible for us to make this determination without an opportunity to review all of the proofs.

Ex. 9, E-mail dated Aug. 22, 2008, from D. Herlihy to B. Jackson (emphasis added).

24. In order to enable viewing of these Works by Defendant, Mr. Backer created a private website to which he posted many of his Photographs in digital format. Mr. Backer provided Defendant with access to this website. However, in order to protect the Works, Mr. Backer did not post the Works in a readily downloadable format. Instead, Mr. Backer used the Adobe Flash system to display the Works for Defendant's private viewing while preventing Defendant from copying or otherwise misusing the Works without Mr. Backer's permission.

25. Without any notice or request for permission, Highsteppin' found some method to circumvent the Adobe Flash system that was protecting Mr. Backer's Works and copied many of the Works, including at least the McConnell Work, from Mr. Backer's website and published the image in a newsletter circulated to its subscriber list.

26. In a letter from Mr. Backer's agent, Barnaby Jackson, to Highsteppin', dated September 2, 2008, Mr. Jackson wrote,

> We are now aware that you are using Ethan's photographs in your newsletter without his permission. These images were taken from the on-line proofs that Ethan provided for your review. We assume that you intend to negotiate the rights to use these copyrighted works and that you intend to compensate Ethan for this and any other use.

Ex. 10, E-mail dated Sept. 2, 2008, from B. Jackson to D. Herlihy.

27. Despite the letter from Mr. Jackson which indicated that Mr. Backer did not license or otherwise authorize the use of the Works, Mr. Backer discovered on October 15, 2008, that at least 20 of the Works were still being used by Defendant. These Works were posted on the MySpace.com web-pages of the band Porter Batiste Stoltz and George Porter. *See* Ex. 11, screen shots of the MySpace.com web-page from October 15, 2008. Upon information and belief, these web-pages are maintained by Defendant.

28. Shortly thereafter, the Professional Photographers of America sent a letter to Defendant on Mr. Backer's behalf setting forth the general parameters of copyright infringement and

requesting that Defendant cease its unauthorized use of Mr. Backer's Works immediately. Defendant did not respond.

29.     In response to a follow-up e-mail from Barnaby Jackson dated September 17, 2008, Defendant responded as set forth below, claiming that it had a valid license to use Mr. Backer's Photographs but agreeing to cease all use of the Works:

> I am in receipt of the letter written on Mr. Backer's behalf from Maria D. Matthews of Professional Photographers of America.  We must respectfully disagree with the characterization that we are in violation of the Copyright act Highsteppin had a valid license to use Mr. Backer's images, which can be demonstrated by Mr. Backer's verbal authorizations to Highsteppin personnel, by his conduct and by the prior course of dealings between the parties.  We maintain that we had a valid license to use such images for marketing and promotional purposes only, provided that we accorded Mr. Backer a photo credit.  In each instance, Highsteppin honored the terms of this license.  **In any event, this will serve to confirm that we will make no further usage of Mr. Backer's images.**

Ex. 12, E-mail dated Oct. 21, 2008, from D. Herlihy to B. Jackson (emphasis added).

30.     On December 22, 2008, counsel for Mr. Backer sent Defendant a cease and desist letter, setting forth claims of copyright infringement and requesting that Defendant immediately cease any reproduction or other unauthorized use of Mr. Backer's Works.

31.     On December 29, 2008, Mr. Backer discovered that a number of his Works were still posted on at least the George Porter MySpace.com web-pages, again despite the fact that Defendant never had a license to those Works.  *See* Ex. 13, screen shots of the MySpace.com web-page from December 29, 2008 displaying Mr. Backer's Works.  Upon information and belief, this web-page is maintained by Defendant.

32.     On January 8, 2008, Defendant responded to the cease and desist letter and denied any copyright infringement.

## COUNT I
## Copyright Infringement of the McConnell Work

33. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 32, above.

34. Plaintiff owns the registered copyright in and to the McConnell Work.

35. Plaintiff has pending applications for copyright registration in the remaining Works.[1]

36. Plaintiff has at no time relinquished ownership of his copyright in any of the Works, including the McConnell Work.

37. Defendant has reproduced identical or near-identical copies of at least twenty-two (22) of Plaintiff's Works, including the McConnell Work, without permission from Plaintiff on at least one concert flyer and/or on the Porter Batiste Stoltz or George Porter MySpace.com web-pages.

38. The acts of Defendant constitute copyright infringement of the Works under 17 U.S.C. § § 106 and 501, et seq.

39. Defendant will continue to infringe Plaintiff's McConnell Work unless permanently enjoined by this Court.

40. Plaintiff has been and continues to be damaged by Defendant's acts of infringement, and is entitled to a permanent injunction and an award of damages under 17 U.S.C. §§ 502, 504(a)(1), and 504(b), (c).

41. Plaintiff is also entitled to payment of the costs and fees, including attorneys' fees, incurred in connection with pursuing this action under 17 U.S.C. § 505.

42. Upon information and belief, the infringing acts of Defendant were undertaken and/or continued with knowledge of Plaintiff's rights and without any good faith basis in law or fact that Defendant's actions were legal, thus Defendant's infringing acts were committed willfully and with reckless disregard for Plaintiff's known rights.

---

[1] At this time, Plaintiff claims copyright infringement of the McConnell Work because the McConnell Work is registered. However, once the copyright applications for the remaining Works mature to registration with the U.S. Copyright Office, Plaintiff intends to amend this Complaint to assert infringement of Works covered by each of the three currently pending copyright applications.

## COUNT II
## Mass. Gen. Laws 93A, § 11

43. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 42, above.

44. Defendant engaged in trade and commerce and this action arises out of Defendant's business dealings with Plaintiff Mr. Backer.

45. Defendant's continued reproduction and publication of the Works without Plaintiff's permission through at least December 2008 despite Plaintiff's demands that Defendant cease all use of the Works, and despite Defendant's promise to do so, constitutes an unfair and deceptive trade practice under Mass. Gen. Law ch. 93A, § 11.

46. Defendant's unfair trade practices were material, and undertaken willfully and knowingly, and caused proximate damage to Plaintiff Mr. Backer.

## COUNT III
## Fraud

47. Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 46, above.

48. As noted above, on at least two occasions, Defendant made false statements to Plaintiff with an intent to deceive Plaintiff.

49. First, in August 2008, Defendant indicated its willingness to pay for the right to use Plaintiff's Works and in doing do, induced Plaintiff to make his Works available through a private website for viewing. Defendant subsequently copied at least one image from this private website and reproduced that image in an email advertisement without Plaintiff's permission and without providing compensation to Plaintiff.

50. Second, in October 2008, Defendant stated that "this [letter] will serve to confirm that we will make no further usage of Mr. Backer's images." However, Plaintiff discovered subsequent unauthorized use of his Works by Defendant on at least the MySpace web-pages of George Porter.

51.     On information and belief, the false statements made by Defendant were made with the intention that Plaintiff rely upon those statements to cease policing of Defendant's unauthorized reproduction and abandon of his complaints of copyright infringement.

52.     Plaintiff relied on these intentional misrepresentations and, as a result, opened itself up to copyright infringement.

## COUNT IV
## Violation of the Digital Millennium Copyright Act ("DMCA"), 12 U.S.C. § 1201

53.     Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 52, above.

54.     Plaintiff posted the Works on a private website to allow Defendant to view the Works.

55.     In posting the Works on a private website, Plaintiff used the Adobe Flash system as an effective technological control measure to prevent Defendant from downloading or copying the Works from the website.

56.     Defendant circumvented the technological control measure and copied the Works.

57.     Defendant's copying of the Works constitutes copyright infringement.

58.     Defendant's circumvention of the technological control measure in order to infringe Plaintiff's copyright constitutes a violation of 12 U.S.C. § 1201 (a)(1).

### Prayer for Relief

WHEREFORE, Plaintiff respectfully prays that this Court:

(1) Enter judgment in favor of Plaintiff and against Defendant on each of the counts in the Complaint;

(2) Permanently enjoin Defendant from using any of the Works without permission pursuant to 17 U.S.C. § 502, from further violating the DMCA pursuant to U.S.C. § 1203, and from further unfair and deceptive trade practices pursuant to Mass. Gen. L. ch. 93A;

(3) Order the recall, impounding and destruction of all infringing copies made of the Works used or distributed by defendant in violation of Mr. Backer's exclusive rights in and to its

Works (and, in the case of electronic copies, order that all such copies be deleted from the computers or other storage means on which they reside), pursuant to 17 U.S.C. §§ 503 and 1203;

(4) Direct Defendant to pay to Mr. Backer his actual damages and any additional profits realized by Defendant, pursuant to 17 U.S.C. §§ 503, 504;

(5) Order that, in the alternative to actual copyright damages, at Mr. Backer's election, Defendant shall pay Mr. Backer statutory damages pursuant to 17 U.S.C. § 504;

(6) Order that, in the alternative to actual damages, at Mr. Backer's election, Defendant shall pay Mr. Backer statutory damages pursuant to 17 U.S.C. § 1203;

(7) Direct Highsteppin' to pay Mr. Backer his damages sustained as a result of Highsteppin's fraud and unfair and deceptive trade practices;

(8) Enter judgment that Highsteppin's copyright infringement, fraud, and unfair and deceptive trade practices have been knowing and willful;

(9) Award Mr. Backer his attorneys' fees and costs in prosecuting this action, pursuant to 17 U.S.C. § 505 and Mass. Gen. L. ch. 93A, or otherwise;

(10) Award Mr. Backer treble damages pursuant to Mass. Gen. L. ch. 93A or otherwise; and

(11) Award such other relief as this Court deems just and proper.

## Request for Jury

Plaintiff requests that this action be tried before a jury.

| | |
|---|---|
| Dated: May 6, 2009 | /s/ Courtney M. Quish |
| | Amy L. Brosius (BBO # 656521) |
| | Adam J. Kessel (BBO # 661211) |
| | Courtney M. Quish (BBO # 662288) |
| | FISH & RICHARDSON P.C. |
| | 225 Franklin Street |
| | Boston, MA 02110 |
| | P: (617) 542-5070 |
| | F: (617) 542-8906 |
| | quish@fr.com |
| | |
| | *Attorneys for Plaintiff* |

22186375.doc